# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LEOLA SHACKELFORD, | ) | |
| by and through MAHONA WITTER, | ) | |
| Next friend and Attorney-in-fact, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | NO. CIV-15-0218-HE |
| | ) | |
| ED LAKE, Director of Oklahoma | ) | |
| Department of Human Services, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Leola Shackelford sued Ed Lake, the Director of the Oklahoma Department of Human Services ("DHS"), and Joe Nico Gomez, the Director of the Oklahoma Health Care Authority, in their official capacities under 42 U.S.C. § 1983. She seeks declaratory and injunctive relief requiring defendants to determine she is eligible for Medicaid benefits.[1] Plaintiff and defendants have moved for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[2] Having considered the parties' submissions, the court concludes plaintiff's motion should be denied and defendants' motion

---

[1] *To the extent plaintiff seeks a declaration that defendants violated her federal rights by finding her ineligible for Medicaid benefits, plaintiff's claim is barred by the Eleventh Amendment. See* Isham v. Wilcox, *10 Fed. Appx. 729, 731 (10th Cir. 2001). While her claim for declaratory relief might not be barred to the extent it is ancillary to her request for injunctive relief, the issue does not have to be resolved as the court concludes plaintiff is not entitled to injunctive relief. See id.*

[2] *"Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."* Buell Cabinet Co. v. Sudduth, *608 F.2d 431, 433 (10th Cir.1979).*

should be granted.[3]

## Background [4]

Plaintiff Leola Shackelford is a 96 year old single woman who resides in an assisted living facility in Yukon, Oklahoma. In March 2013, Ms. Shackelford had six living adult children: Alta Marie Webb, Hubert Lavon Shackelford,[5] Albert Ray Shackelford, Mahona Jean Witter, Linda Lou Whitaker and Brenda Kay Beard. On March 18, 2013, Ms. Shackelford executed an operating agreement in connection with the creation of the Shackelford Family L.L.C., an Oklahoma limited liability company (the "LLC"). On March 22, 2013, Ms. Shackelford conveyed by quitclaim deed her interest in certain real property located in Lindsay, Oklahoma to the LLC.[6] On the same date she transferred all her personal property, including the contents of her bank accounts, certificates of deposit, annuities and investments accounts to the LLC by executing a bill of sale and assignment. Both the deed and bill of sale state that the transfers were to be effective as of March 18, 2013. The value of the assets Ms. Shackelford transferred to the LLC, exclusive of claimed exempt resources, was $601,079.95. In exchange for the assets transferred to the LLC, Ms. Shackelford

---

[3]*Page references to briefs and exhibits are to the CM/ECF document and page number.*

[4]*Most of the facts are not in dispute. Plaintiff failed, though, to comply with Local Rule 56.1 and specifically controvert any of defendants' material facts in their summary judgment motion. Those facts are therefore deemed admitted.*

[5]*Hubert Shackelford died last year.*

[6]*Defendants take the position that "because the transfers in this case occurred prior to the legal creation of the LLC, the transfers are void ab initio and the transferred assets revert to the grantor (Mrs. Shackelford)." Doc. #57, p. 5, ¶7. The timing issue is discussed below.*

2

received a 100 percent ownership interest in the LLC. She was the sole member of the LLC with 100 percent of the voting rights. However, under the terms of the Operating Agreement, her interest in the LLC was deemed to be a "restricted" interest. The impact of that designation was, among other things, that her interest could not be transferred to a third party unless that third party was accepted as a substitute member of the LLC. That substitution required the unanimous consent of all members of the LLC. So long as Ms. Shackelford was the 100% owner, the restriction was of no consequence. But she was not the sole owner for long.

On March 18, 2013, Ms. Shackelford also executed documents establishing the Leola Shackelford Revocable Trust (the "Trust"), of which she would be the trustee. Several days later, on March 22, 2013, Ms. Shackelford transferred 99 percent of her interest in the LLC to the Trust. She transferred the remaining one percent interest of her interest in the LLC to her children.

Although Ms. Shackelford had executed the Articles of Organization for the LLC on March 22, 2013, they were not filed with the Oklahoma Secretary of State until April 4, 2013. On that date the Secretary of State issued a Certificate of Limited Liability Company for the LLC. Albert Ray Shackelford, Ms. Shackelford's son, has been the LLC's sole manager since its creation.

Under the terms of the operating agreement, the manager of the LLC has sole discretion regarding distribution of cash and LLC property to the LLC members. And, as noted above, the unanimous consent of the members is needed for a member to withdraw or

3

sell his or her interest to a substitute member.

The net result of the above transfers, even ignoring any issue related to the timing and sequence of them, is that Ms. Shackelford voluntarily relinquished control over her assets through the scheme that was implemented. She deemed her interest in the LLC to be "restricted," which meant she could not sell it without the consent of all other members. Then, by her transfer of the 1% interest, she made her children those "other" members. Unsurprisingly, given the apparent purpose of the arrangement, four of Ms. Shackelford's children have indicated they will not consent to Ms. Shackelford taking any action which would enable her to recover her assets.

Ms. Shackelford applied for Medicaid long-term care benefits under the Advantage Waiver Program with DHS on approximately May 29, 2013, shortly after the transfers of property to the LLC and her children were made.[7] The application reported total resources of $603,079.95, $601,079.95 to be spent down after deducting Ms. Shackelford's resource allowance of $2,000. The application stated that Ms. Shackelford had transferred assets totaling $601,079.95 into a limited liability company, that she owned 100 percent of the LLC

---

[7]*Defendants explained that Ms. Shackelford's attorneys erroneously submitted an application for Medicaid benefits under the Advantage program, a home and community-based waiver program, which is intended to help individuals stay at home. However, they state the error is not material in determining plaintiff's eligibility for Medicaid assistance because the financial and related requirements are the same whether the person is seeking eligibility for the Advantage program or a long-term care (nursing) facility. Compare Oklahoma Administrative Code ("OAC") 317:35-17-11(1)(B) with OAC 317:35-19-21(a)(1)(B).*

but had gifted a one percent interest in it to her children,[8] and that her share in the Shackelford Family, LLC is a non-liquid resource which cannot be converted to cash within 20 days and therefore is not considered a countable resource for purposes of Medicaid eligibility.

DHS issued a Notice of Denial on November 26, 2013. The reasons the agency gave for denying Ms. Shackelford's application were that her capital interest in the LLC was a countable resource which exceeded her statutory limits, the property transfer to the LLC was determined to be a transfer without receipt of fair market value in return and DHS determined the LLC was a trust-like device. Plaintiff, through Mahona Witter, her attorney-in-fact, then filed this lawsuit seeking declaratory and injunctive relief. Plaintiff seeks a declaration that defendants violated her federal rights by failing to certify her as eligible for Medicaid benefits and an injunction ordering defendants to grant her Medicaid coverage and certifying her Medicaid eligibility retroactively.

## Analysis

"Medicaid is a program administered cooperatively by states and the federal government to provide 'health care to persons who cannot afford such care.'" Morris v. Oklahoma Dep't of Human Servs., 685 F.3d 925, 928 (10th Cir. 2012) (quoting Brown v. Day, 555 F.3d 882, 885 (10th Cir.2009)). "If a state [such as Oklahoma] opts to participate,

---

[8]*The parties disagree as to whether the one percent interest in the LLC was transferred to plaintiff's five children or her six children. See plaintiff's undisputed fact nos. 9,13 [Doc. #49, p.8], and defendants' response #13 [Doc. #57, p. 6]. The dispute is immaterial.*

it receives financial assistance from the federal government, on the condition that the state operates its Medicaid program in compliance with federal statutory and regulatory requirements." Brown, 555 F.3d at 885. Federal law requires a state's plan for medical assistance to provide "that such assistance . . . be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(a)(8). One category of medical assistance Medicaid provides is long-term care ("Medicaid LTC"), which pays for care for eligible individuals who live in long-term care facilities, such as nursing homes. *Id.* at §1396a(a)(10)(A)(ii)(V). To qualify for Medicaid LTC, an individual cannot have countable resources exceeding $2,000 and cannot have disposed of any assets for less than fair market value during the last five (5) years preceding the date of the application for benefits. *See id.* at §§ 1396p(c)(1)(A), 1396p(c)(1)(B)(i).

A "resource," for purposes of Medicaid is an asset. Peterson ex rel. Jones v. Lake, 2014 WL 2949509, at *4 (W.D. Okla. June 30, 2014). The term is defined as "cash or other liquid assets or any real or personal property that an individual ... owns and could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201; *see* Gragert v. Lake, 541 Fed. Appx. 853, 857 (10th Cir.2013) (20 C.F.R. § 416.1201 provides operable definition of a "resource"). "Liquid resources are cash or other property which can be converted to cash within 20 days." *Id.* § 416.1201(b). Resources that are ordinarily considered to be liquid assets include stocks, bonds, life insurance policies, savings and checking accounts, and certificates of deposit. An asset will be considered a liquid resource, so long as "'the individual has the right, authority or power to liquidate the property'" and

6

the property can be "'converted to cash within 20 days.'" Peterson, 2014 WL 2949509, at *4 (quoting 20 C.F.R. §§ 416.1201(a)(1); 416.1201(b)).

Plaintiff's argument boils down to this: She established the LLC, conveyed her assets to it and owned (initially) 100% of it. But she structured it so that her ownership interest was "restricted." So once she transferred her interest in the LLC to her trust and to her children, neither she nor her trust could, without the consent of her children, realize on her ownership interest. As a result, she argues her $600,000 in value, more or less, cannot be considered a "countable resource" for Medicaid eligibility purposes.

Defendants challenge the arrangement on various grounds. Relying on the Oklahoma Limited Liability Act, they initially argue that because the transfer of property to the LLC and the transfer of interest in the LLC to Ms. Shackleford's children (which resulted in there being new members in the LLC and the amendment of the Operating Agreement) both predated the creation of the LLC, the transfers are null and void. Section 2007(B) of the Act provides that "articles of organization are effective, and the limited liability company is formed, at the time of the filing of the articles of organization with the Secretary of State." 18 Okla. Stat. § 2007(B).⁹ As the articles of organization for the LLC were not filed until April 4, 2013, defendants argue the LLC was not formed and was not legally capable of taking title to the transferred property prior to that date. Therefore, defendants assert,

---

⁹The LLC's operating agreement provided that it was to "become effective upon filing of the Articles of Organization for the Company with the Secretary of State" and that "[t]he Company shall commence upon the filing of its Articles of Organization with the Oklahoma Secretary of State . . . ." Doc. #50-2, p. 25.

without legally valid transfers, the assets effectively remain in Ms. Shackleford's control and are countable resources for purposes of determining her eligibility under the Medicaid rules. Until the LLC was a legal entity, defendants assert, the children also could not be added as new members. Plaintiff responds that the property was transferred when the bill of sale and assignment and the quitclaim deed were delivered to the LLC, which occurred after April 4, 2013, not when they were signed.

Assuming plaintiff is correct and the property transfers took place after the LLC was formed,[10] the problem, which plaintiff does not address, is the alleged change in ownership interest in the LLC that occurred before the LLC became a legal entity. As defendants note, plaintiff offers no evidence that the LLC followed "the requirements of its own operating agreement in admitting new members and diluting Mrs. Shackleford's interest," *see* Doc. #50, p. 21 & n.10, or that its members <u>after</u> April 4, 2013, ratified the actions previously taken. By her silence plaintiff concedes the point. Without a valid transfer of the percentage interest in the LLC to her children, Ms. Shackleford retained her 100 percent interest in the LLC and the assets remain available to her as a resource for purposes of Medicaid eligibility. That is not the only basis, though, for denying plaintiff relief.

Defendants also argue that, because the Shackleford Family, LLC is a "trust-like" device intended to benefit Ms. Shackleford, it is considered a resource under 42 U.S.C.

---

[10]*Because they prevail on other grounds, the court finds it unnecessary to address defendants' argument, set out principally in footnote 10, that the transfer of shares and admission of new members to the LLC were invalid because the LLC did not comply with the meeting requirements set out in the operating agreement.*

8

§1382(b). "Congress amended the Medicaid Act to create the 'trust rules' in order to close a loophole exploited by some applicants: Because trusts frequently do not qualify as resources under the regular rules, some applicants placed their assets and money in trusts in order to evade the Medicaid Act's resource limitation." Lemmons v. Lake, 2013 WL 1187840, at *4 (W.D.Okla. March 21, 2013), (citing Sable v. Velez, 388 Fed. Appx. 235, 237 (3d Cir. 2010)), *vacated as moot*, 2013 WL 6913757 (W.D. Okla. June 28, 2013)). "Now, all trusts and trust-like devices are considered resources unless explicitly excluded by statute." Sable, 388 Fed. Appx. 235, 238 (3d Cir. 2010) (citing 42 U.S.C. § 1382b(e)(3) and (e)(6)).

A trust-like device is defined as "a legal instrument, device or arrangement, which may not be called a trust under State law, but is similar to a trust." POMS SI 1120.201(B)(5).[11] It "'must include: (1) a grantor (2) who transfers property (3) to an individual or entity with fiduciary obligations (a trustee) (4) "with the intention that it be held, managed or administered by the individual or entity for the benefit of the grantor or others.'" Peterson, 2014 WL 2949509, at *3 n.6 (quoting Lemmons v. Lake, 2013 WL 1187840, at *4). Defendants contend that all four criteria are satisfied here. Ms. Shackelford is the grantor who transferred property valued in excess of $600,000 to the LCC. Her son,

---

[11] *"In determining a person's eligibility for Medicaid, states must use reasonable standards that only factor in income and resources which are available to the recipient and which would affect the person's eligibility for SSI. Medicaid eligibility often is determined using the same methodology for the treatment of resources as is applicable to the Supplemental Security Income ("SSI") program." Brown, 555 F.3d at 885. Therefore, reference to SSI regulations and the Social Security Administration's set of policy guidelines in the Program Operations Manual System ("POMS") is appropriate. See id.; Gragert v. Lake, 541 Fed.Appx. 853, 856 (10th Cir. 2013).*

9

Albert Ray Shackelford, the manager of the LLC, owes her and the other LLC members a fiduciary duty of good faith and loyalty by operation of the Oklahoma Limited Liability Company Act, in addition to the duties he owes her as a result of being her attorney-in-fact. And he acknowledged that the LLC was established to manage Ms. Shackelford's property and he used its assets for her support and maintenance.

     Plaintiff disputes that the third element of the test is satisfied. The property was not, she contends, transferred to someone who owes her fiduciary duties as a trustee. She asserts that she set up an LLC, not a trust, that the LLC does not have trust powers, is not her trustee and is managed not by a trustee, but by a manager. While her son (Albert Ray Shackelford) may have owed her fiduciary duties as the manager of the LLC or as her attorney-in-fact, she argues, quoting from <u>Lemmons,</u> that "the fact that [Albert Ray] owes fiduciary duties to his mother in a certain context does not make him her trustee in all circumstances." <u>Lemmons</u>, 2013 WL 1187840, at *5. Plaintiff asserts that the court held in both <u>Lemmons</u> and <u>Peterson</u> that the "third element of the test required the assets to be transferred to an individual or entity with fiduciary obligations as a <u>*trustee*</u> for the Medicaid applicant." Doc. #56, p. 4. Plaintiff also contends that, while defendants accurately state that the purpose of the LLC was to hold and manage assets that formerly belonging to her, they were incorrect when they state that the property was to be used for her support and maintenance. Plaintiff contends that Mr. Shackelford testified that he managed the assets for the benefit of all members. As manager of the LLC, she states, he "made distributions to its members which included but were not limited to Plaintiff" and, it was [a]s attorney-in-fact for Plaintiff, he paid Plaintiff's

bills and debts." Doc. 56, p. 5.

Lemmons and Peterson are distinguishable. In both of those cases the Medicaid applicant transferred property to another person in exchange for a promissory note, and the grantee then proceeded to use the transferred property for his or her own benefit. There is no indication the asserted trustee in those cases held the transferred asset or assets for the benefit of the grantor and used the property to pay the grantor's bills and debts. That is evident from the court's statement in Lemmons: "Because Gary Lemmons holds the farm and account for his own benefit, not as his mother's trustee, the Note does not qualify as a resource." Lemmons v. Lake, WL 1187840, at *5. Similarly, in Peterson, the court stated: "The defendants, however, have presented no evidence from which a factfinder may infer that . . . Jones has any intention of using or holding the property for Peterson's benefit." Peterson, 2014 WL 2949509, at *3 n.6. Here plaintiff acknowledges "the purpose of the LLC was to hold and manage" her former assets, Doc. #56, p. 5, which the LLC manager admitted have been used to pay Ms. Shackelford's obligations. While Mr. Shackelford denies the capacity in which he paid those bills – whether as manager of the LLC or as Ms. Shackelford's attorney-in-fact, it does not matter as he paid them using assets Ms. Shackelford had transferred to the LLC.

The fact that the LLC was not formally labeled a "trust" and that Mr. Shackleford was not named a "trustee" is not determinative. The rule is intended to encompass arrangements that, while not trusts, are similar to trusts. What does count is how the entity operates. The LLC's purpose was to "take care of [Ms. Shackleford's] property." Doc. #50-2, p. 6. Mr.

Shackleford's job as manager of the LLC is to "take care of all of mother's bills, her debts and I write the check for those." Doc. #50-2, p. 6. And he stated that he had "no other responsibilities along that line." *Id.* As his mother's attorney-in-fact, as the manager of the LLC, *see* 18 Okla. Stat. § 2016,[12] and as the de facto trustee of her trust-like device, Mr. Shackleford clearly owed his mother fiduciary responsibilities.[13] Based on the undisputed facts, the LLC is "similar to a trust," POMS SI 1120.201(B)(5), and the property Ms. Shackleford transferred to it counts as available resources for purposes of Medicaid eligibility. *See* Wesner v. Velez, 2010 WL 1609674, at *4 (D.N.J. Apr. 19, 2010) (promissory note fit definition of trust-like device under POMS).[14]

---

[12]Under the Oklahoma Limited Liability Company Act, "[a] manager shall discharge the duties as a manager in good faith, with the care an ordinary prudent person in a like position could exercise under similar circumstances, and in the manner the manager reasonably believes to be in the best interests of the limited liability company." 18 Okla. Stat. § 2016(1).

[13]*The court does not have to decide whether it makes any difference in the analysis if the manager made distributions to other members besides plaintiff. Mr. Shackleford did state in his affidavit that he had made distributions to other LLC members. However, that was directly contrary to his earlier deposition testimony. Compare Doc. #50-2, p. 14 with Doc. #56-1, ¶4. Moreover, plaintiff's counsel instructed Mr. Shackleford not to answer when defendants' attorneys attempted to ask him about the assets of the LLC. See Doc. #50-2, pp. 11-12 (plaintiff's counsel responded to defense counsel's statement that he was "interested in trying to find out ... whether there's been a dissipation of those assets, so that they're not even available," with "I'm going to instruct him not to answer as to what assets are currently there."). A party cannot keep preclude the other side from obtaining evidence on a subject and then rely on testimony on that same issue.*

[14]*Plaintiff contends that she cannot liquidate her 99 percent interest in the LLC because that would require the unanimous consent of the other members, which they testified they will not give. In other words, she claims her capital interest in the LLC is not liquid, not that the assets in the LLC are not liquid. However, because the court has concluded the assets themselves in the LLC, are "countable," it does not have to consider her liquidity argument. See Doc. #56, pp. 6-7.* Morris, *685 F.3d at 925 and* Gragert, *541 Fed. Appx. at 853, relied on by plaintiff, are distinguishable. Both involved assets (an annuity and a promissory note) which could not be converted to cash and thus were illiquid assets that could be excluded in determining Medicaid eligibility.*

As their final argument, defendants contend that plaintiff, by "gifting shares to her children and ceding full control of her transferred assets by virtue of the LLC's unanimity requirements," made an impermissible transfer without receiving fair market value in exchange. Doc. #50, p. 28. Defendants do not challenge plaintiff's initial infusion of capital into the LLC, as she received 100 percent control of the company and retained the right, authority and power to liquidate her interest. It is the transfer and passage of control over the asserts to her children that defendants dispute. Citing her expert's opinion, they claim Ms. Shackelford has "reduced to zero the fair market value of the assets she transferred by depriving herself of the opportunity to dispose of them on the open market." *Id.*, p. 26.[15] Defendants rely on 42 U.S.C. § 1396p(c)(3) to support their argument. The statute provides:

> For purposes of this subsection, in the case of an asset held by an individual in common with another person or persons in a joint tenancy, tenancy in common, or similar arrangement, the asset (or the affected portion of such asset) shall be considered to be transferred by such individual when any action is taken, either by such individual or by any other person, that reduces or eliminates such individual's ownership or control of such asset

Plaintiff asserts that § 1396p(c)(3) does not apply because, until she made the gift to her children, she held the assets or her interest in the LLC alone, rather then jointly or in common with her children. In light of the discussion above concluding that the assets in the LLC are countable resources, it is unnecessary to definitively resolve the question of whether plaintiff's "estate planning" would qualify, in substance, as a "similar arrangement" under

---

[15]Plaintiff's expert stated that he did not believe the capital interests in the Shackelford Family LLC could be converted to cash within 20 days for several reasons, including the fact that "the consent of all of the other Members to any transfer cannot be assured." Doc. #50-4, pp. 1-2.

13

that statute. Suffice it to say that the result reached here is wholly consistent with the evident purpose of the statutory scheme and the implementing regulations — that persons with the financial ability to pay for their own care should do so, and that substance, rather than artificially contrived restrictions, should control that determination.

For the reasons stated, the court concludes plaintiff's request for declaratory relief is barred by the Eleventh Amendment and that her request for injunctive relief should be rejected on the merits: DHS did not wrongfully deny plaintiff's application for Medicaid benefits. Accordingly, plaintiff's motion for summary judgment [Doc. #49] is **DENIED** and defendants' motion [Doc. #50] is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 29th day of November, 2016.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE